IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KATHY CASSIDY<br>    Plaintiff,<br>        v.<br>ACME CONSTRUCTORS, INC<br>    Defendant.<br><br>**SERVE:**<br>CT Corporation System, Registered Agent<br>120 South Central Ave.<br>Clayton, MO  63105 | )<br>)<br>)   Case No.<br>)<br>)   JURY TRIAL REQUESTED<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW, Plaintiff Kathy Cassidy ("Cassidy") and for her Complaint against Defendant Acme Constructors, Inc. d/b/a Acme ("Acme") states as follows:

### Parties

1. Cassidy is a citizen of the State of Missouri who resides in this judicial district.

2. Acme is a Missouri corporation with its principal place of business in this judicial district.

### Jurisdiction and Venue

3. Jurisdiction of this Court is based on 28 U.S.C, § 1331, in that this action arises under Title VII of the Civil Rights Act.

### FACTS COMMON TO ALL COUNTS

4. Cassidy was employed by Acme.

5. Acme has a location a 7212 Weil Avenue, St. Louis, Missouri 63119.

6. DJ Simmons ("DJ") is the president of Acme.

7. This is an action for damages and to secure protection of and to redress deprivation of rights secured by Title VII.

8. In August 2016 an individual by the name of Jarvis Ruff ("Ruff"), a male, was hired as CFO of Acme at a salary of $142,800 annually with a $6,000 per month vehicle allowance.

9. Cassidy was hired by Acme in September 2017 at the rate of $103,000 annually as a "controller".

10. Within the first few days of Cassidy's employment, she realized the books of Acme were in bad shape. She asked for meeting with DJ and another Acme employee outside of the office to discuss her findings. Both individuals agreed that the books of Acme were in poor shape.

11. In October 2017 Cassidy was told to clean up the books of Acme and to report directly to DJ and by pass Ruff. She reported the progress of her findings via email to DJ.

12. On January 19, 2018 DJ stopped by Cassidy's office to inform her Acme was letting Ruff go that day and asked Cassidy if she was still willing to accept his position.

13. Cassidy accepted the position vacated by Ruff.

14. On January 22, 2019 a resolution was filed with the State of Missouri to remove Ruff as a corporate officer and naming Cassidy as corporate secretary of Acme Real Estates Holdings, Acme Constructors, Anvil Engineering and TNT Machine and Fabrication. All banks and insurance companies were contacted regarding needed new signature cards and such.

15. On January 23, 2018, Cassidy asked DJ if he needed a photograph of her for the website that listed the Acme officers' and their bios. DJ responded by indicating that Acme was not going to add her picture to the website at that time.

16. On January 24, 2018, the first payroll day after Cassidy's promotion to take over Ruff's' duties, DJ came by her office to discuss her salary.

17. DJ told Cassidy that she would be employed at the rate of $127,500.00 annually with no vehicle allowance.

18. When Cassidy inquired as why she was not being employed at the same rate as her male predecessor she was told by DJ that she would move up to the rate paid Ruff within a couple of months once she showed that she could produce the Acme financial statements.

19. From January 2018 through November 2018 Cassidy did the duties of both the CFO of Acme and the Controller of Acme.

20. During January to November 2018 Cassidy reorganized the accounting department of Acme to meet Generally Accepted Accounting Procedures, (GAAP). Cassidy set standard accounting software procedures and trained the staff. During this time, she received constant praise from the staff, Acme auditors, bankers, insurance companies, the Acme ESOP valuator and other end users for her performance, knowledge, dedication, and hard work.

21. During the January to November 2018 time frame Cassidy asked DJ seven (7) times for a performance review so she would be entitled receive the amount of money that had been paid to Ruff as was previously promised. DJ always told her that he was "too busy".

22. During the entire time period that Cassidy worked for Acme until June 2019 Cassidy worked in excess of seventy (70) hours per week.

23. During the time period from June 2019 through October 2019 Cassidy reorganized the Acme corporate structure to break the company up to include another new company, ACME Equipment Leasing, and correct some corporate structure issues regarding the ESOP.

24. As of June 2019 Cassidy commenced working regular hours (40 plus hours per week).

25. From October 1, 2019 through January 31, 2020 Cassidy again was required to work in excess of 70 hours per week.

26. During the period of October 1, 2019 through January 31, 2020, Cassidy oversaw a full migration of accounting software to a hosted site with a complete restructure of chart of accounts and revision of vendor and customer numbers.

27. On February 12, 2020, DJ came to the doorway of Cassidy's office and screamed at her for approximately five minutes because she had posted as an expense an ESOP payment.

28. Soon thereafter, Cassidy explained the correct rationale for posting the expense and the Acme outside accountants confirmed that her posting of the ESOP amount was correct.

29. Later on February 12, 2020, DJ admitted to Cassidy that she was correct but did not apologize for his behavior in screaming at her.

30. On February 14, 2020 DJ came to Cassidy's office and asked her to meet him in his office. At said meeting Cassidy asked DJ if he thought Cassidy did a better job that her two predecessors. DJ said yes and stated that Cassidy is excellent at accounting and further, he stated that he had told Cassidy this many times.

31. At the February 14, 2020 meeting in DJ's office Cassidy asked DJ why both of her predecessors were paid more than her. Cassidy then asked DJ why he felt he could talk to her in an abusive dismissive manner when he did not talk to the other two board members, or anyone else working at Acme like that. Cassidy then asked DJ if it was possible that he talked to her in an abusive manner because she was female. DJ said, "Maybe". DJ quickly added, "we all have faults". Cassidy then stated "DJ, I think you treat me differently than my predecessors because I'm female and I want you to be clear, I am hereby formally letting you know that I feel

I am a victim of sex discrimination." Cassidy repeated this statement, and DJ told Cassidy that he understood.

32. On February 20, 2020 Cassidy was out of the office for a full day team building event with the accounting department and the project assistants.

33. On February 20, 2020, Cassidy received a 10:28 am email from DJ stating: "Kathy, I want to let you know that I am taking this seriously. We have hired a 3rd party investigator. They will be in touch with you in the near future. I have alerted them that you will be out until 3/3. Thanks!"

34. At 4:45pm on February 20, 2020 Cassidy was back at the office and discovered that her voice over IP password had been reset and she had no access to her voice mails. All of her voice mails had been deleted.

35. On March 23, 2020, Cassidy filed a charge with EEOC alleging sex discrimination. (Exhibit A)

36. On April 4, 2020, the Acme leadership time requested AAIM, a management organization, to perform a compensation review of Acme.

37. On April 9, 2020 Cassidy received a phone call from an Acme employee stating that the employee has been told to ignore any tasks Cassidy gave to the employee. Cassidy notified DJ who did not respond.

38. On April 28, 2020 at a monthly review meeting Cassidy noted that DJ had prefilled his portion of the review form in which he accused Cassidy of being dishonest by stating accounting deadline dates that were inaccurate and that Cassidy had commented that another employee was "prickly". Neither of these two alleged acts occurred.

39. On April 30, 2020, DJ asked Cassidy how the search for a controller was coming. DJ told Cassidy "to be sure anyone she interviewed be tested for full leadership testing so that they could take over her position should anything happen to her employment".

40. On May 4, 2020 DJ announced that he had the AAIM compensation review back and had a second report coming.

41. On May 12, 2020, Cassidy requested and received the AAIM compensation review from DJ. The compensation review showed the median wage for construction CFOs with Cassidy's construction experience as $168,882.

42. On May 18, 2020, DJ stopped by Cassidy's office. At that time Cassidy confirmed with DJ that she understood him correctly that they could take over Cassidy's position "should anything happen to my employment". DJ stated "yes, that is the requirement".

43. On May 18, 2020, Cassidy requested and received the second compensation review report which showed the median wage for a CFO in construction to be in the $160,000 range.

44. On May 27, 2020, Cassidy emailed DJ to add the topic of her salary to her monthly review. DJ agreed.

45. On May 28, 2020, Cassidy participated in her monthly review with DJ and asked him to discuss he salary. DJ refused to discuss Cassidy's salary and stated that he wanted to save it for "mediation".

46. At the May 28, 2020 monthly review meeting DJ accused Cassidy of not doing

one on one meetings with employees under her supervision which was untrue.

47. During the entire period from when Cassidy was promoted to CFO she frequently requested to have her picture added to the Acme website where the pictures of the other Acme leadership team members were shown. Cassidy's request to have her picture on the website was consistently refused until <u>after</u> charges had been filed with EEOC.

48. On June 23, 2020, Cassidy remotely attended a mediation with EEOC.

49. On June 24, 2020, Cassidy was terminated by Acme.

## **COUNT I—DISCRIMINATION UNDER TITLE VII**

50. Cassidy incorporates paragraphs 1-49.

51. Cassidy filed charges of discrimination against Acme with the Equal Employment Opportunity Commission (EEOC) on or about March 23, 2020 and on June 24, 2020 alleging sex discrimination and retaliation (attached as Exhibits A and B).

52. A Right to Sue Letter was received by Cassidy on or about September 29, 2020 from EEOC (attached as Exhibit C).

53. Cassidy filed the instant action within ninety (90) days of the date of the Notice of Right to Sue and within two (2) years of her termination.

54. Cassidy was discriminated because of her sex in the following ways:

    a) Males performing the same or less work as she were paid significantly more;

    b) She was consistently treated abusively by DJ Simmons unlike any other employee of Acme because she was a female; and

    c) She was excluded from participating on the company website and company meetings because she was a female.

55. Cassidy was retaliated against for filing a charge with the EEOC in the following ways:

    a) She was denied a pay increase;

    b) Employees under her direction were told not to take directions from her;

    c) She was excluded from management meetings in which she would ordinarily be included in as a member of management;

    d) She was told to find a replacement for herself; and

    e) She participated in an EEOC mediation.

56. As a result of Acme's conduct and actions, Cassidy has suffered and will continue to suffer lost wages and other benefits of employment.

57. As a result of Acme's conduct and actions, Cassidy has suffered emotional distress and mental anguish.

58. As a result of Acme's conduct and actions, Cassidy has incurred and will continue to incur attorney's fees and costs of litigation.

WHEREFORE, Cassidy prays for judgment against Acme for:

    a. Back pay and lost benefits; front pay;

    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

    c. Punitive damages;

    d. Her attorney fees and the costs and expenses of this action;

    e. Such other relief as the Court deems just and equitable.

KAPLAN ASSOCIATES, LLC

By: /s/ Lawrence P. Kaplan
Lawrence P. Kaplan, #19782
101 South Hanley Road, Suite 1310
Saint Louis, Missouri 63105
Telephone: 314/863-2929
Facsimile: 314/863-9777
lkaplan@ka-law.com
*Attorneys for Kathy Cassidy*